UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| LYDIA CLEMENTS and<br>RAYMOND CLEMENTS | CIVIL ACTION |
| VERSUS | NO. 05-1426 |
| QUARK, LTD., QUARK FISHING LTD.<br>AJC INTERNATIONAL, INC.,<br>AJC INTERNATIONAL (EXPORT), INC.,<br>AJC INTERNATIONAL (WEST), INC.,<br>AJC INTERNATIONAL TRADING CORPORATION,<br>AJC INTERNATIONAL, LTD., (VIRGIN ISLANDS),<br>AJC ATLANTIC, AJC FOODS, NORBULK SHIPPING (UK) LTD. | SECTION "F" |

ORDER AND REASONS

Before the Court is AJC International's motion to dismiss the cross-claim of Quark, Ltd. and Norbulk Shipping (UK) Ltd. for failure to state a claim.  For the reasons that follow, the motion is GRANTED.

**Background**

Plaintiff filed suit on April 14, 2005, under Section 905(b) of the Longshore and Harbor Workers' Compensation Act for personal injuries he sustained while performing longshore work on the M/V VISON at the Jourdan Road Wharf in New Orleans.  The named defendants in this action are Quark, Ltd. and Norbulk Shipping (UK)

1

Ltd., as owner and operator of the vessel and AJC International, Inc., as the voyage charterer. Plaintiff alleges that he was injured when the wooden decking in the hold of the vessel broke under the driver's side wheel of a forklift, suddenly causing it to tilt forward dropping a pallet of frozen chicken on him.

On December 1, 1999, Eco Shipping, Inc. chartered the M/V VISON from Quark, Ltd. through a time charter arrangement. On March 31, 2004, Eco Shipping sub-chartered the vessel to AJC through a voyage charter arrangement. On June 22, 2006, cross-claimants Quark, Ltd. and Norbulk Shipping (UK) Ltd. filed a cross-claim against AJC seeking indemnity for any liability that they may incur from the plaintiff. Cross-claimants based their claim on provisions of the time charter party between Eco Shipping and AJC. AJC now moves to dismiss Quark's and Norbulk's cross-claim.

## I. Standard for 12(b) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a motion to dismiss for failure to state a claim may be treated as a motion for summary judgment under Rule 56 if matters outside the pleadings are raised. Fed.R.Civ.P. 12(b)(6). Rule 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Id. No genuine issue of fact exists if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. See Matsushita

Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). And a genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Id. Thus, "[i]f the evidence is merely colorable, or is not significantly probative," then summary judgment is appropriate. Id. at 249-50. Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In evaluating the summary judgment motion, a court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

## II.   Law and Application

A.   VOYAGE CHARTER PARTY

Quark, Ltd. and Norbulk Shipping (UK) Ltd. base their indemnity claim against AJC on the GENCON voyage charter party between Eco Shipping and AJC. They rely on Clauses 5(b) and 18 in support of their argument that the charter requires AJC to perform all cargo operations at their own risk and expense and imposes liability on AJC for any resulting damages. Clause 5(b) provides:

> 5.   Loading/Discharging
>      See Clause 18
>
> (b) F.i.o. and free stowed/~~trimmed~~
>     The cargo shall be brought into the holds, loaded, stowed ~~and/or~~ ~~trimmed~~ and taken from the holds and

3

> discharged by the Charterers or their Agents, free of any risk, liability and expense whatsoever to the Owners.

Rider Clause 18, to which 5(b) refers, states:

> The vessel to be discharged by Receivers/Charterers (sic) stevedores free of risk and expense to the vessel...

See March 31, 2004 GENCON Voyage Charter (stricken language in original). The cross-claimants maintain that, taken together, these clauses shield the vessel interests from any and all liability for damage caused during loading operations.

AJC contends that its liability for damage arising out of cargo operations is limited to cargo damage only. As a mere voyage charterer, AJC submits that it lacked the degree of operational control over the vessel necessary to bear liability for vessel negligence or unseaworthiness. The cross-claimants admit that this may be true as a general proposition, but argue that a charter party may alter the traditional division of responsibilities between an owner and a time or voyage charterer, as here. Cross-claimants contend that the cases cited by AJC in its Motion to Dismiss, including Mallard v. Aluminum Co. of Canada, Inc., recognize that a charter party may evidence an intent to expand the charterer's responsibility, and consequent liability, for specific vessel operations, such as loading, stowing and discharging cargo. Mallard, 634 F.2d 236, 242 n.5 (5th Cir. 1981), cert denied, 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981). This Court

recognizes the right of parties to alter the traditional division of responsibility; however, the Court finds that the text of the charter does not support the cross-claimants argument.

The text at issue is direct and to-the-point. A fair reading of the charter party instructs that it does not or expand the traditional responsibility. AJC argues, and this Court agrees, that the agreement relates only to responsibility and liability for loss or damage to, the cargo itself. Clause 2 of the GENCON agreement provides:

> The Owners are to be responsible for the damage of or loss to the goods for delay in delivery of the goods only in case of loss, damage or delay has been caused by the improper or negligent stowage of the goods or by personal want of due diligence on the part of the Owners or their Managers to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager.
>
> And the Owners are responsible for no loss or damage or delay arising from any other cause whatsoever, even from the neglect or default of the Captain or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this clause, be responsible, or from unseaworthiness or the vessel on loading or commencement of the voyage or at any time whatsoever. Damage is caused by contact with leakage, smell or evaporation from other goods...

Nothing in the agreement purports to shift liability to a voyage charterer in a personal injury suit like this one.

AJC contends that it was merely a voyage charterer of the M/V VINSON and that the cross-claimants had complete operational control over the vessel at the time of plaintiff's injuries and, as

such, are solely liable for his injuries. AJC notes that the vast majority of personal injury charter party cases involve the New York Product Exchange ("NYPE") charter party forms, which follow closely that of the GENCON form at issue in this case. Accordingly, AJC submits, and this Court agrees, that the NYPE line of cases are persuasive and therefore the Court applies that reasoning here to the meaning of related GENCON provisions.

Clause 8 of the NYPE form states, in part:

> The captain (although appointed by the owners),shall be under the orders and directions of the Charterers as regards employment and agency; and the Charterers are to perform all cargo handling, including but not limited to, loading, stowing, trimming, lashing, securing... at their risk and expense under the supervision of the Master...

To bolster its argument, AJC relies on D/S Ove Skou v. Hebert, 365 F.2d 341, 351 (5th Cir. 1966), where the Fifth Circuit determined that Clause 8 of the NYPE merely shifts "financial responsibility" to the charterer for damage to cargo interests, and not liability for personal injuries. In D/S Ove Skou, a longshoreman was injured and sued the time charterer and ship-owner for unseaworthiness and negligence. The shipowner sought indemnity from the time charterer, but the Fifth Circuit held that the time charterer was not liable to either party. It further held that the "charterer had the responsibilities, of a time charterer under a traditional time charter." Id. Further, the Fifth Circuit determined that the "typical clause...specifying that the captain shall be under the orders of the charterers 'as regards employment

and agency' and that 'charterers are to load, stow and trim the cargo' does not give to the time charterer any operational control over these activities.  Rather, the charter party provisions are essentially a specification of the party-owner or charterer- upon whom the ultimate financial cost rests for any one or more of the activities." Id.  The Fifth Circuit wrote:

> Although the charterer is to secure and pay for such port activities as pilotage, towage, port charges, including arrangements for loading and discharging of cargo, such activities if conducted by the ship or its crew do not become those for which the time charterer has an operational responsibility... In the absence of circumstances which would give rise to a liability for actions taken by an independent contractor- none of which are present here- Time Charterer has no responsibility to Ship-owner or to third persons including longshoremen for acts or omission or commission by the stevedores. Id.

The Fifth Circuit in Mallard v. Aluminum Co. of Canada, Inc., 634 F.2d 236, 242 (5th Cir. 1981), following the rule articulated in D/S Ove Skou, held that a time charterer, one who has no control over the vessel, assumes no liability for negligence of the crew or unseaworthiness of the vessel absent a showing that the parties to the charter intended otherwise.  In Mallard, the charter states that "although it is a nondemise charter, under which the owners 'remain responsible for the navigation of the vessel, insurance, crew and all other matters, same as when trading for their own account, [the] charterers are to load, stow and trim and discharge the cargo at their expense under the supervision of the captain...." Id.  The Fifth Circuit noted that, "in light of Skou,

this circuit seems reluctant to find any shift of operational responsibility for personal injuries to the time charterer absent clear language to that effect.  Thus, the second clause enumerated may impose on the charterer the financial responsibility of providing dunnage of the necessary quality without placing on him the obligation to pay damages for personal injury that the dunnage may cause." Id.

Given the similar language of Clause 8 and Clause 2 and 5(b) of the NYPE agreement, this Court is guided by the Fifth Circuit's rationale to the interpretation of the GENCON agreement.  Thus, the Court agrees with AJC that the cross-claimants have failed to show how the clauses relied on by them in support of their claim encompass anything beyond cargo liability.

B.  NEGLIGENT HIRING

Cross-claimants alternatively argue that, even if AJC is not liable for personal injuries attributable to vessel negligence or unseaworthiness, it is liable if it was negligent in selecting the stevedores, plaintiff's employer, to load the cargo at New Orleans. Cross-claimants submit that by "nominating an arguably incompetent stevedore, AJC itself was negligent and must therefore bear any resulting liability, including liability for personal injury."

In support, Quark and Norbulk rely on the Ninth Circuit Court decision in Haluapo v. Akashi Kaium, K.K., 748 F.2d 1363 (9th Cir. 1984), where the plaintiff longshoreman was injured as a direct

result of faulty stowage at a foreign port.  The Ninth Circuit noted, in passing, that plaintiff "might have a cause of action against the Voyage Charterer, which employed the [foreign] stevedoring company and owned the cargo."  Id. at 1365.  Relying on the Ninth Circuit's loose observation, the cross-claimants contend that AJC bears the liability for negligent hiring of the stevedores.[1]  Cross-claimants are wrong.

The Fifth Circuit has addressed negligent hiring in the context of §905(b) in Hess v. Upper Mississippi Towing Corp., 559 F.2d 1030 (5th Cir. 1977), cert. denied, 435 U.S. 924, 98 S.Ct. 1489, 55 L.Ed.2d 518 (1978).  In Hess, the injured longshoreman sued the shipowner, claiming that the owner was negligent in hiring the stevedore, his employer.  The Fifth Circuit held that the employees of the stevedore company cannot sue the shipowner for negligent hiring.  Id. at 1034-35.  The Fifth Circuit does not recognize a cause of action for negligent hiring in this context, and, therefore, neither does this Court.

---

[1] In a subsequent ruling out of the Ninth Circuit, it noted that Haluapo does not establish a cause of action for negligent hiring under Section 905(b) in this circuit, only that a longshoreman "might" have a cause of action against the voyage charterer that had employed the stevedore.  Carpenter v. Universal Star Shipping, S.A., 924 F.2d 1539, 1991 A.M.C. 1555 (9th Circuit 1991).

Accordingly, AJC's motion to dismiss the cross-claim filed on behalf of Quark, Ltd. and Norbulk (UK) Shipping, Ltd. is GRANTED.

New Orleans, Louisiana, September 28, 2006.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE